# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

| | |
|---|---|
| CRAIG CUNNINGHAM, on behalf of himself and others similarly situated, | : Case No.<br>:<br>: |
| Plaintiff, | :<br>: |
| | : **JURY DEMANDED** |
| v. | :<br>: |
| HOMESIDE FINANCIAL, LLC, | :<br>: |
| Defendant. | : |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Craig Cunningham ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Homeside Financial, LLC ("Homeside" or "Defendant") placed telemarketing calls to Plaintiff's cellular telephone number for the purposes of advertising its services using an automated dialing system.

3. Plaintiff never consented to receive these calls, and they were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4. A class action is the best means of obtaining redress for Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Craig Cunningham is a resident of the state of Tennessee who received the calls that are the subject of this action.

6. Defendant Homeside Financial, LLC is a Maryland limited liability corporation that has its principal office at 5950 Symphony Woods Road, Suite 312, Columbia, MD 21044.

**Jurisdiction & Venue**

7. The Court has federal question jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this district.

**TCPA Background**

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

14. Defendant is a provider of mortgage lending services.

15. To promote its services and generate new clients, Defendant relies on telemarketing.

16. One of the telemarketing strategies used by Defendant involves the use of an automatic telephone dialing system ("ATDS") to solicit potential customers.

17. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

18. Plaintiff is the owner of a cellular telephone number, (615) 212-XXXX.

19. Defendant or its agent acting on its behalf placed automated telemarketing calls using an ATDS to Plaintiff's cellular telephone number on March 23, 2017 and May 31, 2017.

20. On March 23, 2017, Plaintiff received a pre-recorded call from Defendant's agent promoting mortgage refinancing services and asking him a series of scripted questions seeking information concerning his eligibility to receive a quote to refinance his mortgage from Defendant and to be used in formulating that quote. After Plaintiff answered the questions, the sales representative stated that its "business partner" would be calling him with a free quote to refinance his mortgage.

21. On May 31, 2017, Defendant or its agent followed up by calling Plaintiff to solicit additional information from him in order to provide him with a quote for Defendant's mortgage refinancing services.

22. On each call, there was a lengthy pause and distinctive click before the sales representative came on the line, indicating that the calls had been made using an ATDS. The generic and scripted marketing pitch that followed also indicates that the calls were made using an ATDS.

23. In fact, it is believed that the May 31, 2017 call was made with the "Velocify" dialing system, which is identified as an "Automated Dialer" on its website. *See* https://velocify.com/products/velocify-dial-iq/ (Last Visited July 25, 2017).

24. That website claims that the dialing system has the "availability and resilience for 10s of thousands of calls simultaneously" and that a caller can "save time by calling prospects with the click of a button" *Id.*

25. Plaintiff never consented to receiving such calls.

26. After Plaintiff complained to Defendant of its illegal telemarketing to him, Defendant informed him that on March 23, 2017, the same date Plaintiff received the initial robocall, he had entered his information into a web form on a website operated by MinuteMortgageQuotes.com. However, Plaintiff has never been to this website or filled out such a form.

27. Plaintiff and the other call recipients were harmed by these calls. They were temporarily derived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

28. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

**Homeside's Liability and Arrangement with its Agent**

29. Defendant is a "person," as defined by 47 U.S.C. § 153(39).

30. For more than 20 years, the Federal Communication Commission has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA,*

5

CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

31. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.*

32. On May 9, 2013, the FCC released a Declaratory Ruling reiterating that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

33. In that Order, the FCC instructed that sellers such as Homeside may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

34. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

35. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

36. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

37. When Defendant's agent contacted Plaintiff on March 23, 2017, Plaintiff was asked a number of scripted questions concerning his eligibility to receive a mortgage refinancing quote from Defendant that are believed to have come from and/or to have been approved by Defendant.

38. Defendant is thus believed to have actively participated in the March 23, 2017 call made by its "business partner" agent, including through guidelines it directed the agent to follow for generating new business for Defendant.

39. Defendant knew (or reasonably should have known) that its agent was violating the TCPA on its behalf, and failed to take effective steps within its power to force the

telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing leads would, and indeed *must*, investigate to ensure that those calls were made in compliance with the TCPA.

40. Defendant also ratified the conduct of its agent by accepting business from that source and standing behind leads purportedly generated through a website operated by an entity doing business as "MinuteMortgageQuotes.com."

41. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

42. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

43. The class of persons Plaintiff proposes to represent are tentatively defined as:

All persons within the United States: (a) to whom Defendant and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

44. Excluded from the class are Defendant, and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

45. The class as defined above is identifiable through phone records and phone number databases.

46. The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

47. Plaintiff is a member of the proposed class.

48. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using an ATDS to call cellular telephones;

    b. Whether Defendant placed calls without obtaining the recipients' prior consent for the calls; and

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

49. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

50. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

51. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

52. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

53. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

54. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:
Violation of the TCPA's Automated Calling Provisions**

55. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

56. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS.

57. As a result of Defendant's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500 in damages for each and

every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

58. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

59. Defendant's violations were negligent and/or knowing.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of the undersigned counsel as counsel for the class;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

                              PLAINTIFF,
                              By his attorneys

                              */s/ Stephen H. Ring*
                              Stephen H. Ring (Atty No. 00405)
                              Law Offices of Stephen H. Ring, P.C.
                              9901 Belward Campus Drive, Suite 175
                              Rockville, Maryland 20850
                              (301) 563-9249
                              (301) 563-9639 facsimile
                              shr@ringlaw.us

                              Brian K. Murphy
                              Jonathan P. Misny
                              Murray Murphy Moul + Basil LLP
                              1114 Dublin Road
                              Columbus, OH 43215
                              (614) 488-0400
                              (614) 488-0401 facsimile
                              murphy@mmmb.com
                              misny@mmmb.com
                              *Subject to Pro Hac Vice*

                              Anthony I. Paronich
                              Broderick & Paronich, P.C.
                              99 High St., Suite 304
                              Boston, MA 02110
                              (508) 221-1510
                              anthony@broderick-law.com
                              *Subject to Pro Hac Vice*